IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

BEDFORD MATERIALS, INC.,

    Plaintiff,

    v.

LEADING TECHNOLOGY COMPOSITES, INC.,

    Defendant.

Case No. 20-1298-EFM-ADM

## MEMORANDUM AND ORDER

This matter comes before the court on Plaintiff Bedford Materials, Inc.'s ("Bedford") Motion to Amend the Complaint. (ECF 18.) Bedford seeks leave to amend its complaint to assert additional factual allegations in support of its existing claims against Defendant Leading Technology Composites, Inc ("LTC"). LTC opposes the amendment as futile, arguing this court lacks subject matter jurisdiction because the most Bedford can recover in this case is $23,275, and therefore the $75,000 amount-in-controversy requirement for diversity jurisdiction is not satisfied. LTC bases this argument not on any concerns triggered by the proposed amended pleading itself, but rather on a dismissal from a related case in the Southern District of Florida. But LTC was not a party to that case, and that case did not involve identical claims. LTC misconstrues the impact of the court's ruling in that case on the claims Bedford asserts here against LTC. Furthermore, LTC's arguments would apply with equal force to the operative complaint and are not triggered by the proposed amendment. Therefore, even if the court were to deny the motion to amend, it would not resolve any potential defects with the amount-in-controversy requirement because LTC

has not properly moved to dismiss the operative complaint for lack of subject matter jurisdiction, and therefore the case would still remain pending.[1] Accordingly, Bedford's motion is granted.

## I. BACKGROUND

According to the complaint, Bedford is a manufacturer and supplier that sold composite materials to a California business known as Armorstruxx, LLC and/or Liberty Armostruxx, LLC (collectively "AXS") for several years. (ECF 1.) Bedford alleges that it initiated sales by purchase order and then invoiced AXS, but that AXS racked up $279,396.87 in unpaid invoices—ranging in dates from August 3, 2010, to March 15, 2017. (*Id.* ¶ 9.) Bedford also alleges the "Terms and Conditions of Sale" that accompanied its invoices to AXS imposed additional service charges that now total at least $300,000 and granted Bedford security interests in the products it sold to ASX. (*Id.* ¶¶ 12-16.) Bedford now seeks to recover from LTC because, according to Bedford, ASX agreed to sell its assets to LTC in 2019 or early 2020. (*Id.* ¶ 19.) Bedford notified LTC that it was attempting to collect payment of ASX's debt. This included a complaint Bedford filed against ASX in the Southern District of Florida on May 13, 2020. (*Id.* ¶ 22.) LTC ultimately closed on its purchase of ASX's assets without responding to Bedford. (*Id.* ¶¶ 23-24.)

Bedford subsequently filed this action on October 28, 2020. In this case, Bedford asserts claims against LTC for (Count 1) violating California's Bulk Sales Law, and (Count 2) based on LTC's liability as ASX's successor. Bedford's motion to amend now seeks to add factual allegations to more explicitly describe the nature of the alleged contract between Bedford and

---

[1] Although LTC asks the court to dismiss the case, raising the issue in response to a motion to amend is procedurally improper. Generally, requests for relief from the court must be made by way of motion. Fed. R. Civ. P. 7(b)(1); *Everest Indem. Ins. Co. v. Jake's Fireworks, Inc.*, 335 F.R.D. 330, 336 (D. Kan. 2020) (declining to consider a request for affirmative relief made in a response brief).

ASX, Bedford's demands for payment, and ASX's responses; amend the amount of outstanding unpaid invoices from $279,393.91 to $277,393.91; omit a table that details the dates and amounts of those invoices; and make other more minor modifications. (*See generally* ECF 21.)

## II.  LEGAL STANDARD

Once a party has filed a responsive pleading, the opposing party "may amend its pleading only with the opposing party's written consent or the court's leave," which should be freely given when justice requires. FED. R. CIV. P. 15(a)(2). The purpose of this rule "is to provide litigants the maximum opportunity for each claim to be decided on its merits rather than on procedural niceties." *SCO Grp., Inc. v. Int'l Bus. Machines Corp.*, 879 F.3d 1062, 1085 (10th Cir. 2018) (internal quotations omitted). The court may refuse leave to amend "only [upon] a showing of undue delay, undue prejudice to the opposing party, bad faith or dilatory motive, failure to cure deficiencies by amendments previously allowed, or futility of amendment." *Wilkerson v. Shinseki*, 606 F.3d 1256, 1267 (10th Cir. 2010); *see also Foman v. Davis*, 371 U.S. 178, 182 (1962) (same).

Practically speaking, the party opposing a motion to amend generally bears the burden to demonstrate why the amendment should not be permitted. *See Wilkerson*, 606 F.3d at 1267 (in the absence of such a showing, amendment should be allowed); *Eminence Capital, LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1052 (9th Cir. 2003) (stating the party opposing amendment bears the burden to show undue prejudice and that there is a presumption in favor of amendment absent such a showing "or a strong showing of the remaining *Forman* factors"). Whether to grant a motion to amend is within the court's sound discretion. *Gorsuch, Ltd., B.C. v. Wells Fargo Nat. Bank Ass'n*, 771 F.3d 1230, 1240 (10th Cir. 2014).

3

**III.     FUTILITY BASED ON LACK OF SUBJECT-MATTER JURISDICTION**

LTC opposes Bedford's proposed amendment as futile. "A proposed amendment is futile if the [pleading], as amended, would be subject to dismissal." *Jefferson Cty. Sch. Dist. No. R-1 v. Moody's Inv'r's Servs., Inc.*, 175 F.3d 848, 859 (10th Cir. 1999). In the context of futility, the court often considers whether the amended complaint could withstand a Rule 12(b)(6) motion to dismiss. *See* 6 CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE § 1487 (3d ed.) (collecting cases); *see also Adhikari v. Kellogg Brown & Root, Inc.*, 845 F.3d 184, 199 (5th Cir. 2017) (court uses the 12(b)(6) standard when evaluating futility). But the court is not necessarily limited to a Rule 12(b)(6) analysis when considering futility. *See Watson ex rel. Watson v. Beckel*, 242 F.3d 1237, 1239-40 (10th Cir. 2001) (a "proposed amendment is futile if the complaint, as amended, would be subject to dismissal for any reason").

Here, LTC does not contend that the allegations in the proposed amended complaint render Bedford's claims subject to dismissal. Rather, LTC contends that that the entire case is subject to dismissal for lack of subject-matter jurisdiction. Bedford pleaded damages exceeding the $75,000 amount-in-controversy requirement, but LTC contends that Bedford's damages are capped at $23,275.25 based on a ruling from the Southern District of Florida.

     **A. The Amount-in-Controversy Requirement**

Diversity jurisdiction requires complete diversity of citizenship and that "the matter in controversy exceeds the sum of value of $75,000, exclusive of interest and costs[.]" 28 U.S.C. § 1332. Generally, the court determines whether the plaintiff has pleaded that the amount in controversy exceeds $75,000 based on the operative complaint; subsequent events that "reduce the amount recoverable below the statutory limit do not oust jurisdiction." *St. Paul Mercury Indem. Co. v. Red Cab Co.,* 303 U.S. 283, 289–90 (1938); *Symes v. Harris*, 472 F.3d 754, 758 (10th Cir.

4

2006) ("It has long been the rule that the jurisdiction of the Court depends upon the state of things at the time of the action brought, and that after vesting, it cannot be ousted by subsequent events."). However, "when a plaintiff files a complaint in federal court and then voluntarily amends the complaint, courts look to the amended complaint to determine jurisdiction." *Bronner on Behalf of Am. Stud. Ass'n v. Duggan*, 962 F.3d 596, 603 (D.C. Cir. 2020) (holding the district court did not err in revisiting the amount in controversy as pleaded in a second amended complaint); *see also Auto–Owners Ins. Co. v. Stevens & Ricci Inc.*, 835 F.3d 388, 396 (3d Cir. 2016) (evaluating the amount-in-controversy requirement when plaintiff filed its amended complaint).

If "the court is satisfied to a [legal] certainty that the plaintiff never was entitled to recover that amount . . . the suit will be dismissed." *St. Paul*, 303 U.S. at 289-90. In other words, the court must distinguish "between subsequent events that change the amount in controversy and subsequent revelations that, in fact, the required amount was or was not in controversy at the commencement of the action." *Jones v. Knox Exploration Corp.,* 2 F.3d 181, 183 (6th Cir.1993). The legal certainty standard is "very strict," and "it is difficult for a dismissal to be premised on the basis that the requisite jurisdictional amount is not satisfied." *Woodmen of World Life Ins. Soc'y v. Manganaro*, 342 F.3d 1213, 1216–17 (10th Cir. 2003). "Generally, dismissal under the legal certainty standard will be warranted only when a contract limits the possible recovery, when the law limits the amount recoverable, or when there is an obvious abuse of federal court jurisdiction." *Id.* at 1217.

### B. The Legal-Certainty Test as to Bedford's Proposed Amended Complaint

LTC has not established that it is a legal certainty that Bedford cannot recover damages exceeding $75,000. LTC relies on the fact that the Southern District of Florida diemissed Bedford's suit against ASX without prejudice. But LTC does not address the fact that Bedford

asserted different claims in the Florida case than Bedford asserts in this case, or the fact that it asserted those claims against a different defendant (ASX versus LTC). In short, LTC's argument amounts to an unsupported issue preclusion/statute-of-limitation defense recast as a jurisdictional argument. But these affirmative defenses generally only provide grounds to dismiss when the defense is obvious from the face of the complaint—in contrast to a situation where both the complaint and proposed amended complaint properly plead subject-matter jurisdiction. *See* FED. R. CIV. P. 8(c) (listing affirmative defenses); *see also Cole v. Sec'y Dep't of Corr.*, 451 F. App'x 827, 828 (11th Cir. 2011) (a 12(b)(6) motion may be based on an affirmative defense when that defense appears "on the face of the complaint"); Charles A. Wright, et al., FEDERAL PRACTICE AND PROCEDURE: CIVIL § 1357 (4th ed. 2016) (discussing reluctance to dismiss based on an affirmative defense unless the defense is obvious from the face of the complaint).

LTC overstates the impact of the Southern District of Florida's ruling on this case. Bedford brought the Florida case against ASX, asserting claims for account stated, unjust enrichment, open account, breach of contract, and constructive fraud. (ECF 23, at 2.) ASX moved to dismiss on multiple grounds, including that Bedford's claims were time-barred under the applicable statutes of limitation. (*Id.* at 10.) The court did not determine which state's statutes of limitation applied, but instead found that, even under the longer statute that was more favorable to Bedford, most of Bedford's claims to recover unpaid invoices were time-barred and Bedford was only entitled to recover, at most, $23,275.25 from ASX. (*Id.*) The court therefore found that diversity jurisdiction did not exist because the amount in controversy was less than $75,000. (*Id.* at 23.)

But Bedford does not proceed on identical claims or legal theories in this case. As Bedford notes, the same unpaid debt may be enforceable under multiple legal theories. For example, Bedford's theory of liability as to LTC's alleged violation of California's Bulk Sales Law (Count

6

I) is premised on its allegations that the law required LTC to provide notice to Bedford that LTC was making a bulk sale; that LTC did not provide such notice or place an amount into escrow or require ASX to place into escrow an amount sufficient to satisfy ASX's debt; and, thus, LTC is liable to Bedford for the full amount of ASX's debt because LTC violated the Bulk Sales Law. (ECF 21 ¶¶ 54-61.)  Bedford contends that this claim accrued during LTC's purchase of ASX's assets on or around May 26, 2020, and would therefore not be time-barred under the one-year statute-of-limitations period applicable to this claim.  Bedford also argues that the invoice dates do not trigger the statute-of-limitations period for its successor liability claim (Count II) because it is premised on the theory that Bedford would have a claim against ASX for account stated in that ASX had promised to pay the outstanding debt *after* the invoice dates.  (*See id.*  ¶¶ 15-31.) *See generally Richburg v. Palisades Collection LLC*, 247 F.R.D. 457, 465 (E.D. Pa. 2008) (explaining that a claim for account stated is "new and independent from is the specific contract action(s) one could bring on the underlying transactions" (internal quotations omitted)).

LTC addresses none of these issues.  It does not argue what statutes of limitation apply to Bedford's claims in this case or which state's law governs.  It does not address the date on which the claims in this case accrued against LTC (not ASX) for statute-of-limitations purposes.  And it does not address the fact that the claims asserted in this case are not the same as those Bedford previously asserted against ASX in the Southern District of Florida, or that those claims are premised, to some extent, on different facts.  Rather, LTC's entire opposition hinges on the Southern District of Florida's dismissal without prejudice of Bedford's claims against ASX.  But in reaching that decision, the court concluded that a portion of Bedford's claims for damages were time-barred by statutes of limitations *applicable to those claims* against ASX based on the facts Bedford pleaded in that case.  LTC urges the same result without acknowledging or addressing the

7

basis for that result. The Southern District of Florida ruling simply did not decide the distinct claims that Bedford asserts against LTC in this case in the manner that LTC suggests.

LTC attempts to cast the limitation on damages as a decided matter by arguing that issue preclusion prohibits Bedford from relitigating the maximum amount of its claim against ASX. Issue preclusion "bars a party from relitigating an issue once it has suffered an adverse determination on the issue." *Burrell v. Armijo*, 456 F.3d 1159, 1172 (10th Cir. 2006). It applies when:

> (1) the issue previously decided is identical with the one presented in the action in question, (2) the prior action has been finally adjudicated on the merits, (3) the party against whom the doctrine is invoked was a party, or in privity with a party, to the prior adjudication, and (4) the party against whom the doctrine is raised had a full and fair opportunity to litigate the issue in the prior action.

*Id.* LTC has not shown that elements (1) and (4) are satisfied. As to element (1), LTC has not shown that the issue of damages recoverable from ASX would be identical to the damages recoverable from LTC, particularly when the claims and theories of recovery are not identical. Element (4) also is not met. Although Bedford was a party to the Southern District of Florida action and it may have had a full and fair opportunity to litigate the legal theories it asserted against ASX, it has not yet had a full and fair opportunity to litigate the legal theories it is now asserting against LTC in this case, which are different.

LTC relies on *Bui v. IBP, Inc.*, in which the court applied issue preclusion even though the prior case was dismissed without prejudice. 205 F. Supp. 2d 1181, 1187 (D. Kan. 2002). But *Bui* only highlights the problems with LTC's position. In *Bui*, the court found that a prior dismissal without prejudice on a jurisdictional issue was decided on the merits as to a subsequent jurisdictional issue in a case involving the same parties and an identical claim. *Id.* at 1187 (noting that the second case was "based upon the same facts, involving the same parties and targeting the

8

same transactions as *Bui I*").  Translating the court's reasoning in *Bui* to this case, the Southern District of Florida's ruling would preclude relitigating that court's decision regarding subject-matter jurisdiction as to Bedford's claims against ASX, but not different claims asserted against a different party premised on different factual underpinnings.

In sum, Bedford has properly pleaded the requisite jurisdictional amount in controversy, and LTC has not established to a legal certainty that the Southern District of Florida case bars Bedford's recovery below that amount.

## IV.   CONCLUSION

LTC has not established that the proposed amendment is futile.  The court will therefore grant the motion to amend because LTC does not assert that it opposes the motion on any other grounds.  Additionally, denying the motion to amend on subject-matter jurisdiction grounds would serve no purpose because the same case and claims would remain in federal court regardless.  The proposed amendments have not triggered a question of subject-matter jurisdiction, and LTC's arguments in opposition to the motion would apply with equal force—if not more—to the operative complaint.  *See Hawkins v. Bd. of Cty. Commissioners of Coffey Cty.*, No. 17-2687-KHV, 2018 WL 3416214, at *2 (D. Kan. July 13, 2018) ("[E]valuating futility requires consideration of proposed amendments, not claims previously pled.").  But LTC has not filed an affirmative motion challenging subject-matter jurisdiction.  *Cf. Szanto v. Szanto*, No. 206CV00048PMPPAL, 2006 WL 8442248, at *2 (D. Nev. Aug. 3, 2006) (denying amendment as futile where the court had already directed plaintiff to show cause why the case should not be dismissed because the operative complaint also did not establish subject-matter jurisdiction and the proposed amended complaint did not cure this).

**IT IS THEREFORE ORDERED** that Plaintiff's Motion to Amend the Complaint (ECF 18) is granted. Bedford must file its First Amended Complaint (ECF 21) as a separate docket entry within two calendar days from the date of this order.

**IT IS SO ORDERED.**

Dated May 4, 2021, at Topeka, Kansas.

s/ Angel D. Mitchell
Angel D. Mitchell
U.S. Magistrate Judge
