IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

BEDFORD MATERIALS CO., INC.,

    *Plaintiff,*

vs.

LEADING TECHNOLOGY COMPOSITES, INC.,

    *Defendant.*

Case No. 20-1298-EFM-ADM

**MEMORANDUM AND ORDER**

Plaintiff Bedford Materials Co. ("Bedford") asserts two claims, one under California's Bulk Sales Law and another for successor liability, against Defendant Leading Technology Composites, Inc. ("LTC"). Bedford has filed a Motion for Summary Judgment on Count I (Doc. 31). LTC has filed a Cross-Motion for Summary Judgment and seeks summary judgment on both claims (Doc. 37). The Court, however, dismisses the case for lack of subject matter jurisdiction.

## I.    Factual and Procedural Background

Bedford is a Pennsylvania corporation with its principal place of business in Pennsylvania. It is a manufacturer and supplier of composite materials. Ron Dandrea has been the President of Bedford since 2013. LTC is a Kansas corporation with its principal place of business in Kansas. LTC designs and manufactures composite solutions, such as body armor plates, for personal protection, aerospace, and vehicle protection markets.

Non-party Armorstruxx, LLC ("ASX") has its principal place of business in Lodi, California. William Gates was the President and CEO from at least 2017 until 2020 of ASX. ASX designed and manufactured ballistic protection solutions for customers in the defense industry. It specialized in designing and manufacturing lightweight armor systems for a wide variety of vehicles and other military mobility platforms. ASX did not maintain a stock of finished products in inventory that was sold to customers but instead manufactured its products to order after receiving a purchase order from a customer.

ASX used composite materials in its business, and Bedford sold composite materials to ASX. For several years, by issuing purchasing orders, ASX would request that Bedford produce and ship composite materials to ASX. Bedford issued invoices to ASX upon shipping the composite materials to ASX. In November and December 2015, ASX made two payments on four invoices, totaling $77,347.25. ASX said future payments would be forthcoming. The last payment Bedford received from ASX was in 2015.

On February 28, 2017, Dandrea emailed Gates an account statement detailing the amounts owed to Bedford from ASX. As of December 31, 2016, the accounts receivable was approximately $271,269.37.

Dandrea emailed again in March 2017. In this email, Dandrea attached the accounts receivable report and asked if "there was a plan to begin paying these overdues?" The last invoice issued by Bedford to ASX was dated March 15, 2017, and payment was due April 29, 2017. In December 2018, Dandrea sent an account statement to Gates, reflecting a balance of $271,269.39. Dandrea requested that ASX "[p]lease advise your payment plan to remedy this overdue amount of $271,269.39." ASX never objected to the statements sent by Bedford and never returned any

product to Bedford. There are approximately 39 invoices, dated between August 3, 2010, and March 15, 2017, that remain unpaid.

In 2019, LTC learned that one or more members of ASX were interested in selling the company or its assets. ASX was one of LTC's manufacturing competitors, and LTC was interested in purchasing ASX's assets. In the summer of 2019, ASX and LTC began negotiations for LTC's purchase of ASX's assets. Negotiations continued for more than eight months. On May 26, 2020, LTC, as "buyer," executed an Asset Purchase Agreement ("APA") with ASX, among other parties, as "sellers."

Prior to the execution of the APA, LTC had notice that Bedford claimed to be owed a debt from ASX. Approximately two weeks before the APA was executed, on May 13, 2020, Bedford filed suit against ASX and Liberty Armorstuxx, LLC, in the United States District Court for the Southern District of Florida. After LTC learned of Bedford's claim, the language of the draft APA was updated to specifically and expressly state that LTC was not assuming any liability associated with Bedford's claim and that such liability was the responsibility of ASX. The executed APA includes this language.

Pursuant to the APA, LTC purchased all of ASX's assets, except specifically defined "excluded assets." The total purchase price paid by LTC for ASX's assets included cash payments exceeding $2,000,000, the assumption of certain liabilities, and earnout payments. $950,000 was wired directly to members of ASX on May 26, 2020.

Bedford filed suit against LTC in the District of Kansas in October 2020. In Bedford's Amended Complaint, it asserts two claims. Its first claim is one under California's Bulk Sales Law and asserts that LTC did not comply with it when LTC purchased ASX's assets. The second claim is one for successor liability and alleges that LTC owes Bedford for ASX's previous debt.

On March 8, 2021, the Southern District of Florida dismissed Bedford's action against ASX and Liberty finding that some of Bedford's claims were barred by the statute of limitations, and because Bedford could only recover $23,275.25, the amount in controversy was not met and it lacked subject matter jurisdiction.[1]  On October 29, 2021, the Southern District of Florida denied Bedford's motion to file an amended complaint and/or motion for reconsideration.  On February 1, 2022, Bedford filed its initial brief with the Eleventh Circuit Court of Appeals challenging the district court's two rulings.

Bedford has filed a motion for summary judgment and requests judgment in its favor on its first claim.  Bedford also requests that the Court enter partial summary judgment in its favor and find that LTC's defenses fail as a matter of law should the Court not fully enter summary judgment in its favor.  LTC has filed a cross motion for summary judgment.  It seeks judgment in its favor on both of Bedford's claims.

The Court heard oral argument from the parties on April 5, 2022.  Specifically, the Court heard argument as to whether issue preclusion is applicable to the facts in this case.

## II.     Legal Standard

Federal courts are courts of limited jurisdiction, and the Court has a duty to examine whether it has authority to hear the merits of an action.[2]  The Court has subject-matter jurisdiction over an action if it arises under (1) federal-question jurisdiction or (2) diversity jurisdiction.[3]

---

[1] After that ruling, on April 12, 2021, Bedford filed a Motion to Amend Complaint in this Court to assert additional factual allegations concerning the nature and establishment of the underlying debt in this lawsuit. Magistrate Judge Mitchell granted the amendment over LTC's objection.  Doc. 25.

[2] Fed. R. Civ. P. 12(h)(3); U.S. Const. art. III § 2; *Glass v. Ocwen Loan Servicing, LLC*, 2015 WL 4647905, at *1 (D. Kan. 2015); *Sheldon v. Sill*, 49 U.S. 441, 448-49 (1850).

[3] 28 U.S.C. § 1331; 28 U.S.C. § 1332.

Diversity jurisdiction requires complete diversity of citizenship between the plaintiff and defendant and an amount in controversy exceeding $75,000, exclusive of interests and costs.[4] " 'The amount in controversy is not proof of the amount the plaintiff will recover,' but rather, 'it is an estimate of the amount that will be put at issue in the course of the litigation.' "[5]

### III.   Analysis

Before addressing the substance of the parties' arguments regarding Bedford's claims, the Court must consider whether it has subject matter jurisdiction. The Court notes that it held a hearing on the parties' motions for summary judgment to specifically address a question of whether issue preclusion is applicable due to a Southern District of Florida case in which Bedford and ASX were parties. In that case, Bedford sued ASX and another company, asserting claims for account stated, unjust enrichment, open account, breach of written contract, and constructive fraud for the payment of approximately $289,000 in unpaid invoices.[6] The Southern District of Florida dismissed the case for several reasons, including lack of personal jurisdiction, failure to state a claim, and that the statute of limitations barred the majority of Bedford's claims against ASX which resulted in the lack of subject matter jurisdiction.[7] At the hearing, before this Court, both parties argued that issue preclusion was inapplicable to this case. LTC, however, asserted that the Court should find Bedford's underlying claims barred by the statute of limitations based on similar

---

[4] 28 U.S.C. § 1332(a); *Dutcher v. Matheson*, 733 F.3d 980, 987 (10th Cir. 2013).

[5] *Armour v. Transamerica Life Ins. Co.*, 2010 WL 4180459, at *2 (D. Kan. 2010) (quoting *McPhail v. Deere & Co.*, 529 F.3d 947, 956 (10th Cir. 2008)).

[6] *See Bedford Materials Co. v. Armorstruxx, LLC*, 2021 WL 5765259 (S.D. Fla. 2021).

[7] *Id.* at * 2-6.

reasoning as the Southern District of Florida. The Court finds that issue preclusion is not applicable, but it still must satisfy itself that it has subject matter jurisdiction.

LTC contends that Bedford can only recover from LTC what it could have recovered from ASX. And LTC argues that the only way Bedford has a valid claim under the California Bulk Sales Act or for successor liability is based on either a breach of contract or account stated claim against ASX.[8] LTC contends that Bedford cannot recover more than approximately $25,000 from ASX because Pennsylvania's four-year statute of limitations for breach of contract or account stated claims bars the majority of Bedford's underlying claims.[9] Thus, LTC contends that the Court lacks subject matter jurisdiction because the amount in controversy does not exceed $75,000.

Bedford contends that the amount in controversy is $271,269.37 because ASX owes Bedford that amount in unpaid invoices. It argues that the one-year statute of limitations under § 6110(a) of California's Bulk Sales Act provides that an action "shall be commenced within one year after the date of the bulk sale," and the bulk sale took place within five months of Bedford filing suit. Because the bulk sale took place on May 26, 2020, and Bedford commenced suit on October 28, 2020, Bedford contends that it has a timely claim to $271,269.37. Bedford also contends that its claim only depends upon the existence of a debt, but if it does need to state an

---

[8] Under the California Bulk Sales Act, the claimant (Bedford) "has the burden of establishing the *validity and amount* of the claim, and the buyer has the burden of establishing the amount that the claimant would not have realized if the buyer had complied." Cal. Comm. Code § 6107(b) (emphasis added). Section 6102 defines a "claim" as "a right to payment from the seller, whether or not the right is reduced to judgment, liquidated, fixed, matured, disputed, secured, legal, or equitable." *Id.* § 6102.

On a successor liability theory, the liabilities of the previous company *may* be transferred to the successor company. As noted above, however, if the underlying claims are not valid against the previous company, those claims will not be valid against the successor company. In this case, LTC cannot be held liable for more debt than ASX is liable to Bedford.

[9] The parties agree that Pennsylvania law governs LTC's defenses, including the statute of limitations, concerning ASX's underlying claim and debt. *See* Pretrial Order, p. 2, ¶ d(i).

underlying claim against ASX, it does so for account stated, and this claim falls within Pennsylvania's four-year statute of limitations.

The Court agrees with LTC's contention that Bedford must have a valid underlying claim against ASX to recover anything from LTC because Bedford is attempting to recover from LTC what is owed from ASX. And the mere existence of a debt does not constitute a means for recovery. Thus, the issue is whether Bedford could recover from ASX on an account stated claim and whether this claim falls within the statute of limitations.

Under Pennsylvania law, an account stated claim is a variety of a contract claim.[10] It is "an account in writing that has been 'examined and accepted by both parties.' "[11] "Account stated is a separate cause of action independent from an underlying contract."[12] Because an account stated does not arise out of the parties' contract, "once the account is stated and accepted, the cause of action is based on the account stated and not the underlying contract."[13] It "traditionally arises when two parties, who engage in a series of transactions with one another, come together to balance the credits and debits and fix upon a total amount owed."[14] The "final tally, once assented to, becomes the 'account stated.' "[15] "Under Pennsylvania law, a plaintiff must establish the following elements to support an account stated claim: '(1) there has been a running account, (2)

---

[10] *Richburg v. Palisades Collection LLC*, 247 F.R.D. 457, 465 (E.D. Pa. 2008).

[11] *MAP Refrigeration, Inc. v. New Albertsons, L.P.*, 2019 WL 7049015, at *3 (E.D. Pa. 2019) (quoting *Leinbach v. Wolle*, 61 A. 248, 248 (Pa. 1905)).

[12] *Id.* (citing *Richburg*, 247 F.R.D. at 464-65).

[13] *Id.* (citing *Richburg*, 247 F.R.D. at 464).

[14] *Richburg*, 247 F.R.D. at 464 (citing *David v. Veitscher Magnesitwerke Actien Gesellschaft*, 35 A.2d 346, 349 (1944)).

[15] *Id.* (citing *David*, 35 A.2d at 349).

a balance remains due, (3) the account has been rendered upon the defendant, and (4) the defendant has assented to the account.'"[16]  Pennsylvania's statute of limitations for an account stated claim is four years.[17]

Here, the facts show that Bedford (through its President Dandrea) emailed ASX on February 28, 2017, March 27, 2017, and December 13, 2018.  In these emails, Bedford attached account statements with accounts receivable due of approximately $271,269 from ASX.[18]  In two of these emails, there was a request for ASX to respond and advise on how they planned to remedy the overdue amount of $271.269.  Bedford never received a response.  Bedford states that its account stated claim against ASX arises from these three emails in 2017 and 2018 and that its account stated claim therefore would not be barred by the statute of limitations because it was filed within Pennsylvania's four-year statute of limitations.

The facts demonstrate that Bedford rendered the account to ASX, but there remains an issue whether ASX accepted it.  "Acceptance need not be express and may be implied from the circumstances."[19]  "A party's retention of a statement of account for an unreasonably long time, without objection, may be a manifestation of assent."[20]  To demonstrate implied acceptance due to a failure to object to the account stated, "the complaining party must show a pattern or history

---

[16] *Jacoby Donner, P.C. v. Aristone Realty Cap., LLC*, 2020 WL 5095499, at *12 (E.D. Pa. 2020) (quoting *Citibank (S.D.), N.A. v. Ambrose*, 13 Pa. D. & C. 5th 402, 405 (Pa Ct. Comm. Pl. 2010)); *see also Rochester Drug Coop., Inc. v. Goodheart Pharmacy, Inc.*, 2016 WL 6920465, at *5 (E.D. Pa. 2016) ("To establish an account stated, one party must render the account and the other party must accept it.") (citations omitted).

[17] 42 Pa. Con. Stat. Ann. § 5525(a)(4); *see also Richburg*, 247 F.R.D. at 465.

[18] Approximately 39 invoices, dated between August 3, 2010, and March 15, 2017, make up this accounts receivable.

[19] *Bill Goodwin Const., LLC v. Wondra Const., Inc.*, 2013 WL 4005307, at *6 (M.D. Pa. 2013) (citing *Robbins v. Weinstein*, 17 A.2d 629, 634 (Pa. Super. Ct. 1941)).

[20] *Id.* (citing Restatement (Second) of Contracts § 282(1) (1981)).

of the parties settling accounts by rendering account statements over a period of time and an extended series of transactions."[21]  However, "an allegation that a defendant never contested its bills is not sufficient to show acquiescence in the correctness of the account."[22]

In this case, because there is no express acceptance by ASX of Bedford's account statements, the Court must determine whether there is a pattern or history of Bedford and ASX settling accounts.  There is not one.  Instead, the evidence shows that ASX previously paid Bedford for specific invoices.  In November and December 2015, ASX last paid Bedford four specific invoices totaling $77,347.25.  There is no evidence that ASX was simply paying an account stated.  It appears that at the time of ASX's payment in 2015, there was an outstanding balance of approximately $230,000, Bedford did not provide an account stated to ASX.  Instead, Bedford issued four specific invoices, totaling $77,347.25, that ASX paid in full.

The evidence shows that the first time Bedford sent a compilation of the accounts receivable, or an account stated, was February 28, 2017.  At that time, the accounts receivable was approximately $271,269.37.  Bedford also sent two more communications in March 2017 and December 2018 with the same amount due.  Bedford did not receive any response to these emails. ASX's lack of response does not show implicit acceptance of the account stated where there is no evidence that Bedford and ASX ever engaged in such a pattern or history.[23]  Indeed, as noted above, ASX paid specific invoices in late 2015, and there is no evidence that Bedford provided

---

[21] *Rochester Drug*, 2016 WL 6920465, at *5 (citation omitted).

[22] *Loeffler Thomas P.C. v. Fishman*, 2016 WL 1457895, at *10 (E.D. Pa. 2016) (alteration omitted) (citing *Line Sys., Inc. v. Sprint Nextel Corp.*, 2012 WL 3020356, at *20 (E.D. Pa. 2012)).

[23] *Cf. Rochester Drug*, 2016 WL 6920465, at *5.  In *Rochester Drug*, the defendant ordered goods and made partial payments over two years without objecting to the invoices.  *Id*.  In contrast here, ASX did not make partial payments on invoices without objecting to them.  Instead, ASX fully paid specific invoices in late 2015.  Bedford did not provide ASX with any outstanding invoices or an amount due until 2017.

ASX with an account stated (or an outstanding accounts receivable) prior to or at that time. Instead, the evidence shows that Bedford first communicated in 2017 and 2018 about outstanding invoices (between 2010 and 2017) and never received any response. Thus, there is no explicit or implicit acceptance by ASX of Bedford's account stated. Accordingly, Bedford cannot show it has any right to payment from ASX (and correspondingly LTC) for an account stated claim.

Because Bedford does not have an account stated claim against ASX, the only way Bedford can recover from ASX is through a breach of contract claim on each specific invoice.[24] As LTC points out, the majority of the invoices are barred by Pennsylvania's four-year statute of limitations for breach of contract actions. Bedford's invoices date from August 3, 2010, through March 15, 2017, and they require payment within 45 days from the invoice. Bedford did not pursue legal action on any of these invoices until it filed its complaint in the Southern District of Florida against ASX on May 13, 2020. Thus, only seven invoices, totaling $26,054.50, would not be barred by the four-year statute of limitations. Because Bedford cannot establish that it has a valid right to payment on any amount above $26,054.50 against ASX, and can only hold LTC liable for that amount, the amount in controversy is not met in this case.

This case is dismissed for lack of subject matter jurisdiction, and the case is closed.

**IT IS SO ORDERED**.

Dated this 3rd day of May, 2022.

ERIC F. MELGREN
CHIEF UNITED STATES DISTRICT JUDGE

---

[24] The Court notes that Bedford does not explicitly proceed under a breach of contract theory.